# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

SHEMTOV MICHTAVI,

                Plaintiff,

    v.

WILLIAM SCISM, et al.,

                Defendants

CIVIL ACTION NO. 1:12-CV-01196

(JONES, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff Shemtov Michtavi, a prisoner currently incarcerated at Ayalon Prison in Ramla, Israel, filed this *Bivens*[1] action on June 22, 2012. (Doc. 1). At the time he filed the complaint, Plaintiff was incarcerated at the Allenwood Low Security Federal Correctional Institution located in White Deer, Pennsylvania ("FCI Allenwood Low"). This civil rights action was filed pursuant to 28 U.S.C. § 1331 and included claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq*.

Pursuant to the Prison Litigation Reform Act, this Court screened both the original (Doc. 1) and amended complaint (Doc. 41) under 28 U.S.C. § 1915A. The remaining claim in this case is Plaintiff's Eighth Amendment deliberate indifference to a serious medical need claim against the following Defendants in their individual capacities: William Scism, former Warden of FCI Allenwood Low; D. Spotts, former Assistant Health Services Administrator (AHSA) and medical supervisor at FCI Allenwood Low; Dr. J. Miller, supervising physician at FCI Allenwood Low; and K. Mutchler, Physician Assistant (PA) at FCI Allenwood Low.

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Pending before this Court is Defendants' motion to dismiss and for summary judgment.[2] (Doc. 58).

I.  **PROCEDURAL HISTORY**

On June 22, 2012, Plaintiff initiated this action while an inmate at FCI Allenwood Low. (Doc. 1). Plaintiff was incarcerated at FCI Allenwood Low while serving a twenty (20) year sentence imposed in November 2004 by the United States District Court for the Southern District of Florida. *See United States v. Michtavi*, Case No. 1:02-CR-20030-CR-UUB (S.D. Fla. Nov. 23, 2004); (Doc. 41, p. 3). On October 9, 2012, this Court reviewed and screened Plaintiff's original complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and issued a Report and Recommendation. (Doc. 31). Per this Court's January 30, 2013 Order (Doc. 38), several of the claims were dismissed and on February 28, 2013, Plaintiff filed an amended complaint. (Doc. 41). On March 28, 2013, this Court screened Plaintiff's amended complaint and issued a Report and Recommendation. (Doc. 44). Per this Court's May 16, 2013 Order (Doc. 46), the only remaining claim in this action is Plaintiff's Eighth Amendment claim against Defendants Scism, Spotts, Miller, and Mutchler.

---

[2] Defendants include Physician Assistant (PA) K. Mutchler in their motion to dismiss and argue that Mutchler should be dismissed because Plaintiff failed to state any allegations against her in the amended complaint. (Doc. 62, p. 3). Although Judge Jones' Order allows Plaintiff's claim against Mutchler to proceed (*see* Doc. 38), Plaintiff states that he intentionally did not include Mutchler in his Amended Complaint, filed February 28, 2013 (Doc. 41), because he no longer seeks to bring this claim against her. Plaintiff does not object to dismissing Mutchler from the complaint. (Doc. 71, p. 2). Thus, as an initial matter, it is recommended that the Court grant Defendants' motion to dismiss Defendant Mutchler from the complaint.

On November 8, 2013, Defendants filed a motion to dismiss and for summary judgment. (Doc. 58). On December 13, 2013, Defendants filed a brief in support (Doc. 62), a statement of material facts (Doc. 63), and a table of authorities and contents. (Doc. 64). On April 24, 2014, Plaintiff filed a brief in opposition to the motion (Doc. 71), and his agreement and oppositions to Defendants' statement of material facts. (Doc. 72). On May 13, 2014, Defendants filed a reply brief. (Doc. 76). This matter is now ripe for disposition.

## II.   BACKGROUND

On January 20, 2010, Plaintiff received an operation on his prostate by an outside facility doctor, Dr. Chopra. (Doc. 41, p. 6). As a result of the operation, Plaintiff alleges that he suffered, and continues to suffer, from a condition called retrograde ejaculation.[3]

Plaintiff states that in January 2011, he advised both Defendant Dr. Miller, the supervising physician at FCI Allenwood, and Dr. Chopra that he was suffering from retrograde ejaculation as a result of the January 20, 2010, surgery. On January 13, 2011, Dr. Chopra examined Plaintiff and prescribed him the medication Pseudoephedrine. (Doc. 41, p. 9; Doc. 1-2, p. 5). Plaintiff states that this was in response to his complaints of delayed and decreased ejaculation. (Doc. 41, p. 9; Doc. 1-2, p. 5). Plaintiff explains that Dr. Chopra told him that there was a hole in his prostate which was not closed, and the medication would help to close the hole and restore full sexual function. (Doc. 1-2, p. 9). According to Dr. Chopra's examination

--------

[3] Retrograde ejaculation occurs when semen enters the bladder instead of emerging through the penis during orgasm. Although the male can still reach sexual climax, he may ejaculate very little or no semen. *See* http://www.mayoclinic.com/health/retrograde-ejaculation/DS00913.

notes, he did not document any clinical basis for his prescription recommendation of Pseudoephedrine. (Doc. 1-2, p. 10).

On January 26, 2011, Plaintiff met with Dr. Miller and discussed his ejaculation issue with him, and requested the Pseudoephedrine that was prescribed by Dr. Chopra. (Doc. 1-2, p. 10). A non-formulary[4] request was submitted for Pseudoephedrine on January 26, 2011, and the request was denied on January 28, 2011 by the Clinical Director because the treatment of sexual dysfunction is not a medical necessity in the Federal Bureau of Prisons (BOP). (Doc. 1-2, pp. 5, 10). Plaintiff submitted an Inmate Request for Administrative Remedy on February 3, 2011, regarding this issue. (Doc. 1-2, pp. 2-4). On February 15, 2011, Defendant Scism responded to the Inmate Request and stated that: "It is the Bureau of Prison's position that the treatment of a sexual dysfunction is not medically necessary, and based on current practice guidelines, medical providers are not to talk to inmates about ejaculation, since it is a prohibited sexual act." (Doc. 1-2, p. 5). Plaintiff then filed an appeal of Defendant Scism's response and the appeal was denied.

On March 8, 2011, Plaintiff states that he handed Defendant Spotts an "Inmate Request to Staff" form complaining of his injuries and his need for medical treatment. (Doc. 41, p. 11). Plaintiff claims that Spotts failed to order treatment. (Doc. 41, p. 11).

On July 14, 2011, Plaintiff saw Dr. Chopra for a post-surgery follow-up, and they discussed Defendants' failure to provide the Pseudoephedrine. Dr. Chopra then recommended

---

[4] A non-formulary drug is one that is not approved or readily available from the Pharmacy. These drugs are not automatically dispensed by the Pharmacist.

a different medication for Plaintiff's retrograde ejaculation. Plaintiff states that Defendants again refused to provide any medication prescribed by Dr. Chopra for his condition. (Doc. 41, p. 9). According to Dr. Miller's affidavit, on July 14, 2011, Dr. Chopra recommended the medication Elavil to treat the decreased ejaculation. (Doc. 63-1, ¶ 11). This medication was never ordered. (Doc. 63-1, ¶ 11). Dr. Miller states that it was his clinical judgment that it was not necessary to treat the delayed ejaculation condition because sexual activity by inmates is prohibited. (Doc. 63-1, ¶ 11). Dr. Miller determined it was not clinically necessary to treat the decreased ejaculation because Plaintiff was incarcerated. (Doc. 63-1, ¶ 12).

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs because they failed to provide him with medication for his retrograde ejaculation. (Doc. 41, pp. 6-14). Plaintiff further alleges that Defendants were aware of his post-surgery condition and that they deliberately refused to provide him with the prescription medications twice prescribed by Dr. Chopra. Plaintiff claims that these actions on the part of Defendants constitute deliberate indifference to a serious medical need and therefore Defendants violated his Eighth Amendment right.

## III.   STANDARDS

### A. *BIVENS* STANDARD

Plaintiff's instant case is a 28 U.S.C. § 1331 civil rights action under *Bivens*. A *Bivens* action is analogous to a civil rights action under 42 U.S.C. § 1983; in *Naranjo v. Martinez,* No. 08-1755, 2009 WL 4268598, at *6 (M.D. Pa Nov. 24, 2009), the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou,* 438 U.S. 478,

5

504, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978). A civil rights claim brought under *Bivens* is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a *Bivens* claim. *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001); *Paton v. LaPrade,* 524 F.2d 862, 871 (3d Cir. 1975); *Cyrus v. Hogsten,* No. 06–2265, 2007 WL 88745, at *3 (M.D. Pa. Jan.9, 2007). To state a claim under *Bivens,* the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown,* 250 F.3d at 800; *Cyrus,* 2007 WL 88745, at *3.

Civil rights claims may only be brought against "persons." 42 U.S.C. § 1983. Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.,* 430 F.3d 159, 173 (3d Cir. 2005); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (citing *Rhode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (collecting cases).

*See also Beattie v. Dept. of Corrections SCI Mahanoy,* No. 08-0622, 2009 WL 533051, *3 (M.D. Pa. Mar. 3, 2009) ("a prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights") (citation omitted); *Dennis v. Jensen*, 10-1486, 2013 WL 2245144 (M.D. Pa. May 20, 2013).

B. Motion to Dismiss Standard

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556

6

U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of

7

his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In reviewing a motion to dismiss, a court may consider matters of public record. *See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### C. SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury . . . could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888

(1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV.   DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Dennis v. Jensen*, No. 10–1486, 2013 WL 2245144, at *3 (M.D. Pa. May 20, 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "Mere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner . . . do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.*, 499 Fed. Appx. 142, 146 (3d Cir. 2012) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). When analyzing deliberate indifference, a court must determine whether the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Deliberate indifference may be manifested by an intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or

risk of injury." *Beckett v. Department of Correction*, No. 10–0050, 2011 WL 4830787, at \*11 (M.D. Pa. Oct. 12, 2011). This also includes "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990); *see also Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

In a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, 2000 WL 1522855, at \*2 (E.D. Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Such complaints fail as constitutional claims under § 1983 since the exercise by a doctor of his professional judgment is never deliberate indifference. *See, e.g., Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. *See, e.g., Ham v. Greer*, 269 Fed. Appx. 149 (3d Cir. 2008); *Bronson v. White*, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007).

A. DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT –
DEFENDANTS SCISM AND SPOTTS

Defendants move to dismiss Defendants Scism and Spotts because they argue that their involvement in this case is limited to their supervisory roles in responding to Plaintiff's administrative requests. This Court has already screened Plaintiff's Eighth Amendment claim

against Defendants Scism and Spotts, and found that Plaintiff has stated a claim sufficient to survive a motion to dismiss. (Doc. 38). As such, the Court will not consider Defendants' motion to dismiss these two Defendants. Alternatively, Defendants argue that Scism and Spotts are entitled to summary judgment on Plaintiff's Eighth Amendment claim because there is no evidence in the record that these defendants had the requisite personal involvement in Plaintiff's treatment.

A defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. While "it is well-settled that a prison official's handling of a prison grievance procedure does not equate to personal liability in a civil rights claims," a plaintiff may state a claim against a supervisor based on personal involvement if there are allegations of personal direction or of actual knowledge and acquiescence. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Further, where a plaintiff's complaint reflects that an inmate received some level of on-going medical care, prison supervisors may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer*, 991 F.2d at 69; *see also Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where supervisory staff simply review grievances, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim."

*Hakeem v. Fisher*, 2010 WL 5463325, at *8 (M.D. Pa. Dec. 1, 2010) (citing *Garvey v. Martinez*, 2010 WL 569852, at *7 (M.D. Pa. Feb. 11, 2010)).

In *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993), the Third Circuit concluded that the prison warden and the State Commissioner for Corrections were not deliberately indifferent under the Eighth Amendment "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer*, 991 F.2d at 69. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236. The Third Circuit has held that a non-medical prison official will generally not be liable when he is justified in believing that the prisoner is in capable hands. *Spruill*, 372 F.3d at 236.

In the instant case, Plaintiff alleges that Defendants Scism and Spotts had full knowledge that Plaintiff was being denied medical care. (Doc. 41). Plaintiff states that Scism, as Warden of FCI Allenwood Low, had prior knowledge and personal involvement. (Doc. 41, p. 4). Plaintiff states that Scism became personally involved in February 2011 when Plaintiff filed an Inmate Request for Administrative Remedy. (Doc. 41, p. 10). Plaintiff states that Scism "had the authority to order that the medically necessary treatments be performed and proper medications prescribed." (Doc. 41, p. 10). Plaintiff further alleges that Spotts, as former Assistant Health Services Administrator (AHSA) and supervisor of the medical department, had knowledge of the events. (Doc. 41, p. 4). Plaintiff states that Spotts became personally involved with the claim on March 8, 2011, when Plaintiff gave her an "Inmate Request to Staff form." (Doc. 41, p. 11).

Plaintiff states that Spotts had the authority to allow Plaintiff to be treated immediately (Doc. 41, pp. 11-12), but that Spotts refused to do so. (Doc. 41, p. 12). Plaintiff states that both Scism and Spotts knew of the situation and failed to ensure that Plaintiff received the proper medication and treatment prescribed by Dr. Chopra. (Doc. 41, p. 11).

A warden's job duties and the AHSA's job duties are administrative in nature and do not include making clinical decisions regarding any aspect of an inmate's health. *See Wall v. Bushman*, 12-2112, 2013 WL 6086762, at *8 (M.D. Pa. Nov. 19, 2013). According to Scism, his duties "did not include providing medical care to inmates" and he "had no input into clinical decisions regarding medical care provided to inmates." (Doc. 63, ¶¶ 46-47). Spotts states that she "was responsible for managing and directing the activities of a multi-disciplinary team of health care professionals who are responsible for medical, dental, and allied health services, such as pharmacy, lab, and x-ray, to the inmate population." (Doc. 63, ¶ 49). She states that her duties were "administrative only" and that she "only supervised non-clinical staff." (Doc. 63, ¶ 50). Further, Spotts could not prescribe medication and could not provide medical care or treatment to inmates. (Doc. 63, ¶¶ 51-52).

The Court finds that summary judgment in favor of Defendants Scism and Spotts is appropriate because Scism and Spotts lack the requisite personal involvement in the issuance of medication. As non-medical personnel, neither Scism nor Spotts can be considered deliberately indifferent for failing to issue medication. Further, Plaintiff was under the medical care of a physician at the time he alleges claims against Scism and Spotts. As such, it is recommended that summary judgment be entered in favor of Defendants Scism and Spotts pursuant to Federal Rule of Civil Procedure 56.

B. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - DEFENDANT
MILLER

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim against Defendant Dr. Miller. Plaintiff alleges that his Eighth Amendment rights were violated when Defendants' denied him post-operative treatment and failed to treat his retrograde ejaculation condition on the basis that conditions related to ejaculation were outside the purview of what is "clinically necessary" within the BOP context. There is no dispute that Defendants did not provide Plaintiff with the medication prescribed by Dr. Chopra and that Defendants refused to treat Plaintiff's retrograde ejaculation condition. Defendants admit that they did not treat Plaintiff's condition because their position is that sexual dysfunction is not a medical necessity in the BOP. (Doc. 1-2, p. 10). However, the Court finds that there is a question of material fact as to whether Defendants' failure to provide medication and post-operative treatment could lead to long-term injuries and harm, and as such, could constitute a serious medical need which was admittedly ignored by Dr. Miller.

"A medical need is 'serious,' in satisfaction of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citing *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)). "In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Lanzaro*, 834 F.2d at 347. *See, e.g.*, *Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir. 1984) (pregnant inmate who miscarried stated cognizable claim where she alleged that defendants intentionally delayed emergency medical aid in order to make her suffer); *Ramos v. Lamm*, 639 F.2d 559, 576

(10th Cir. 1980) (delay in providing oral surgery resulted in "continued and unnecessary pain and loss of teeth"), *cert. denied*, 450 U.S. 1041 (1981); *Laaman v. Helgemoe*, 437 F.Supp. 269, 312 (D.N.H. 1977) (denial of treatment may result in permanent damage or require corrective surgery); *Derrickson v. Keve*, 390 F.Supp. 905, 907 (D. Del. 1975) (failure to perform elective surgery on inmate serving life sentence would result in permanent denial of medical treatment and would render inmate's condition irreparable).

Moreover, the right to procreation is a fundamental right and the Supreme Court has recognized that a prisoner has a fundamental right to post-incarceration procreation. *Skinner v. Oklahoma*, 316 U.S. 535 (1942); *Carey v. Population Services International*, 431 U.S. 678 (1977). In *Skinner*, the Supreme Court overturned an Oklahoma statute authorizing permanent sterilization of habitual criminals as a criminal penalty. *Skinner*, 316 U.S. at 536-37. In finding the statute unconstitutional, the Court noted the permanence of the penalty, stating that there "is no redemption for the individual whom the law touches. Any experiment which the State conducts is to his irreparable injury. He is forever deprived of a basic liberty." *Skinner*, 316 U.S. at 541. Thus, prisoners retain a fundamental right to preserve their procreative abilities for use following release from custody. *See, e.g., Goodwin v. Turner*, 908 F.2d 1395, 1402 (1990) (the right to procreate "survives" incarceration).

In this case, Plaintiff states that he was denied medication and treatment to retain his procreative abilities following his release from custody. Specifically, Plaintiff states that his sentence "did not include making me sterile or reducing my ejaculate so I could not father any more children." (Doc. 71, p. 4). Plaintiff is not a life-term prisoner, and the record indicates an approximate release date of September 2020. (*See* Doc. 1-1, p. 50). Plaintiff alleges that the

retrograde ejaculation requires medication and if the condition is not treated immediately, it could result in long-term effects, including sterilization and impotence. (Doc. 1-2, p. 2). Plaintiff avers that this condition was a direct result of the prostate surgery, and any treatment he may seek once he is no longer incarcerated may be irreversible. (Doc. 71, p. 4). Plaintiff alleges long-term ramifications from Defendants' inactions and says that this "denial of proper medical care and treatment to correct an injury [] was obviously caused by the Defendants[] and their medical contractor which has the potential to render the Pro-Se Plaintiff sterile [. . .]." (Doc. 41, pp. 14-15). Plaintiff further elaborates that there is a real possibility of becoming sterile as a result of the retrograde ejaculation. (Doc. 41, p. 15).

There is no medical testimony in the record to support this medical proposition proffered by Plaintiff.[5] Regardless, the question at the summary judgment stage is whether there is a genuine dispute as to any material fact. Because a prisoner has a fundamental right to post-incarceration procreation, there is a genuine question as to whether Plaintiff's condition, left untreated, could result in permanent injury sufficient to constitute a "serious medical need." *See Lanzaro*, 834 F.2d at 347 (where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious); *Spruill*, 372 F.3d at 236 ("the extreme pain and real possibility of permanent injury could qualify [Plaintiff's] condition as a serious medical need"). Thus, in viewing the record in the light most favorable to Plaintiff, Plaintiff has presented evidence of a genuine issue of material fact.

---

[5] The Court offers no opinion on the medical assessment proffered by Plaintiff.

Defendants' arguments are unpersuasive. First, Defendants argue that the treatment is not medically necessary, and thus it was beyond their scope of duty. Second, Defendants argue that Plaintiff's medical concerns were being addressed, and that Plaintiff's allegations are limited to his disagreement with the treatment he was receiving. With respect to Defendants' first argument, if indeed the repercussions from failing to treat retrograde ejaculation lead to long-term and permanent injuries, which includes a denial of prisoner's post-incarceration right to procreation, the condition could in fact be "serious." With respect to Defendants' second argument, although Defendants argue that Plaintiff "disagrees" with the treatment he received, Defendants also admit that the BOP explicitly did not allow post-operative treatment because of the sexual nature of Plaintiff's condition. Contrary to Defendants' assertions, Plaintiff does not appear to disagree with the treatment he received from Dr. Miller; rather, Plaintiff asserts, and both parties admit, that Plaintiff received <u>no treatment at all</u> for his retrograde ejaculation condition.

With respect to the second prong of Plaintiff's Eighth Amendment claim, Plaintiff must show that Defendants were deliberately indifferent to his condition. The Third Circuit has found deliberate indifference in situations where there was "objective evidence that [a] plaintiff had serious need for medical care," and prison officials ignored that evidence. *Nicini v. Morra,* 212 F.3d 798, 815 n.14 (3d Cir. 2000). The Third Circuit has also found deliberate indifference in situations where "necessary medical treatment is delayed for non-medical reasons." *Lanzaro,* 834 F.2d at 346 (citing *Ancata v. Prison Health Services,* 769 F.2d 700, 704 (11th Cir. 1985)); *see also Beckett,* 2011 WL 4830787, at *11 (deliberate indifference manifested by refusal to provide medical care, delayed medical treatment for non-medical reasons, denial of prescribed medical

17

treatment, or denial of reasonable requests for treatment that results in suffering or risk of injury).

In this case, Plaintiff asserts that he informed Dr. Miller that he suffered from retrograde ejaculation, that Dr. Chopra had recommended medication for this condition, and that Dr. Miller deliberately ignored Dr. Chopra's prescription and treatment. (Doc. 71, p. 2). There is no dispute that Dr. Miller chose not to follow the treatment plan for retrograde ejaculation prescribed by Dr. Chopra. Rather, Defendants argue that Dr. Miller could not be considered to have been deliberately indifferent since retrograde ejaculation is not a condition that the BOP treats because inmates are prohibited from having sex or engaging in sexual activity while incarcerated. (Doc. 63, ¶¶ 30, 31). As a result, Dr. Miller chose not to follow Dr. Chopra's advice to treat the retrograde ejaculation. The Court finds that, if Plaintiff has in fact asserted a serious medical need, Dr. Miller's actions to disregard any treatment could constitute deliberate indifference, as evidenced by his refusal to provide medical care, denial of prescribed medication, and denial of requests for treatment that may have long-term implications. As such, there is a genuine issue of material fact as to whether Dr. Miller was deliberately indifferent.

At this juncture, there is no evidence in the record regarding whether a lack of proper treatment for retrograde ejaculation could have long-term and irreversible effects such that it would affect the prisoner's right to procreation following incarceration. The circumstances of this case present a genuine question of material fact as to whether retrograde ejaculation, left untreated, presents a serious medical need that deliberately went untreated by Dr. Miller. As such, it is recommended that Defendants' motion for summary judgment be denied as to Plaintiff's Eighth Amendment claim against Defendant Dr. Miller.

C. Q<small>UALIFIED</small> I<small>MMUNITY</small>

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Acierno v. Cloutier*, 40 F.3d 597, 616 (3d Cir. 1994). In determining whether defendants are entitled to claim qualified immunity, the court should engage in a three-part inquiry: (1) whether plaintiff alleged a violation of his constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official knew or should have known that the alleged action violated the plaintiff's rights. *Rouse*, 182 F.3d at 196–97.

As discussed above, there are genuine issues of material fact as to whether Plaintiff has a serious medical need and whether Dr. Miller was deliberately indifferent to Plaintiff's serious medical need. Further, during the time period underlying the allegations in the amended complaint, the contours of Eighth Amendment case law relating to deliberate indifference to a serious medical need were sufficiently clear so that a reasonable person in the position of Dr. Miller would have understood that his conduct violated the Eighth Amendment. Thus, if Plaintiff's condition constitutes a serious medical need, and Dr. Miller deliberately ignored any post-operative treatment, a reasonable person in the position of Dr. Miller would have

understood that deliberately ignoring post-operative treatment would violate the Eighth Amendment. Thus, at this juncture in the case, qualified immunity is not warranted.

**V.  RECOMMENDATION**

Based on the foregoing, it is recommended that the Court grant in part and deny in part Defendants' Motion to Dismiss and for Summary Judgment. (Doc. 58). Specifically, it is recommended:

1. That the Court **GRANT** Defendants' motion to dismiss Defendant Mutchler from this action pursuant to Fed. R. Civ. P. 12(b)(6);

2. That the Court **GRANT** Defendants' motion for summary judgment as to Defendants Scism and Spotts pursuant to Fed. R. Civ. P. 56;

3. That the Court **DENY** Defendants' motion for summary judgment as to Defendant Miller pursuant to Fed. R. Civ. P. 56; and

4. That this matter be remanded to the undersigned Magistrate Judge for further proceedings.

**Dated: July 14, 2014**                         *s/ Karoline Mehalchick*

                                        **KAROLINE MEHALCHICK**
                                        **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHEMTOV MICHTAVI,

               Plaintiff,

   v.

WILLIAM SCISM, et al.,

               Defendants

CIVIL ACTION NO. 1:12-CV-01196

(JONES, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 14, 2014**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **July 14, 2014**

                        *s/ Karoline Mehalchick*
                        **KAROLINE MEHALCHICK**
                        **United States Magistrate Judge**